# 12-0075-cv

## United States Court of Appeals
### *for the*
## Second Circuit

RUTH CALDERON-CARDONA,

*Petitioner-Appellant,*

– v. –

THE BANK OF NEW YORK MELLON, HSBC, STANDARD CHARTERED,
DEUTSCHE BANK TRUST COMPANY AMERICAS, UBS AG,
CITIBANK, N.A., BANK OF CHINA,

*Consolidated Defendants-Appellees,*

JPMORGAN CHASE BANK, N.A., INTESA SAOPAOLO,

*Respondents-Appellees.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**BRIEF OF AMICI CURIAE<sup>\*</sup> THE PETERSON JUDGMENT
CREDITORS, THE HEISER JUDGMENT CREDITORS, THE
GREENBAUM JUDGMENT CREDITORS, THE ACOSTA JUDGMENT
CREDITORS, THE LEVIN JUDGMENT CREDITORS, THE VALORE
JUDGMENT CREDITORS AND THE MURPHY JUDGMENT
CREDITORS IN SUPPORT OF PETITIONER-APPELLANT**

SALON MARROW DYCKMAN NEWMAN
& BROUDY LLP
*Attorneys for the Peterson Amici Parties*
292 Madison Avenue
New York, New York 10017
(212) 661-7100

*(For Continuation of Appearances See Inside Cover)*

---

<sup>\*</sup> *See inside page for a complete list of Amici Curiae.*

*The Peterson Judgment Creditors*

TERRY ABBOTT, JOHN ROBERT ALLMAN, RONNY KENT BATES, JAMES BAYNARD, JESS W. BEAMON, ALVIN BURTON BELMER, RICHARD D. BLANKENSHIP, JOHN W. BLOCKER, JOSEPH JOHN BOCCIA, JR., LEON BOHANNON, JOHN BONK, JR., JEFFREY JOSEPH BOULOS, JOHN NORMAN BOYETT, WILLIAM BURLEY, PAUL CALLAHAN, MECOT CAMARA, BRADLEY CAMPUS, JOHNNIE CEASAR, ROBERT ALLEN CONLEY, CHARLES DENNIS COOK, JOHNNY LEN COPELAND, DAVID COSNER, KEVIN COULMAN, RICK CRUDALE, RUSSELL CYZICK, MICHAEL DEVLIN, NATHANIEL DORSEY, TIMOTHY DUNNIGAN, BRYAN EARLE, DANNY R. ESTES, RICHARD ANDREW FLUEGEL, MICHAEL D. FULCHER, SEAN GALLAGHER, GEORGE GANGUR, RANDALL GARCIA, HAROLD GHUMM, TIMOTHY GIBLIN, MICHAEL GORCHINSKI, RICHARD GORDON, DAVIN M. GREEN, THOMAS HAIRSTON, MICHAEL HASKELL, MARK ANTHONY HELMS, STANLEY G. HESTER, DONALD WAYNE HILDRETH, RICHARD HOLBERTON, DR. JOHN HUDSON, MAURICE EDWARD HUKILL, EDWARD IACOVINO, JR., PAUL INNOCENZI, III, JAMES JACKOWSKI, JEFFREY WILBUR JAMES, NATHANIEL WALTER JENKINS, EDWARD ANTHONY JOHNSTON, STEVEN JONES, THOMAS ADRIAN JULIAN, THOMAS KEOWN, DANIEL KLUCK, JAMES C. KNIPPLE, FREAS H. KREISCHER, III, KEITH LAISE, JAMES LANGON, IV, MICHAEL SCOTT LARIVIERE, STEVEN LARIVIERE, RICHARD LEMNAH, JOSEPH R. ("JOEL") LIVINGSTON, III, PAUL D. LYON, JR., JOHN MACROGLOU, SAMUEL MAITLAND, JR., CHARLIE ROBERT MARTIN, DAVID MASSA, JOHN MCCALL, JAMES E. MCDONOUGH, TIMOTHY R. MCMAHON, RICHARD MENKINS, II, RONALD MEURER, JOSEPH PETER MILANO, JOSEPH MOORE, HARRY DOUGLAS MYERS, DAVID NAIRN, JOHN ARNE OLSON, JOSEPH ALBERT OWENS, CONNIE RAY PAGE, ULYSSES GREGORY PARKER, JOHN L. PEARSON, THOMAS S. PERRON, JOHN ARTHUR PHILLIPS, JR., WILLIAM ROY POLLARD, VICTOR MARK PREVATT, JAMES PRICE, PATRICK KERRY PRINDEVILLE, DIOMEDES J. QUIRANTE, WARREN RICHARDSON, LOUIS J. ROTONDO, MICHAEL CALEB SAULS, CHARLES JEFFREY SCHNORF, SCOTT LEE SCHULTZ, PETER SCIALABBA, GARY RANDALL SCOTT, THOMAS ALAN SHIPP, JERRYL SHROPSHIRE, LARRY H. SIMPSON, JR., KIRK HALL SMITH, THOMAS GERARD SMITH, VINCENT SMITH, WILLIAM SCOTT SOMMERHOF, STEPHEN EUGENE SPENCER, WILLIAM STELPFLUG, HORACE RENARDO ("RICKY") STEPHENS, JR., CRAIG STOCKTON, JEFFREY STOKES, ERIC D. STURGHILL, DEVON SUNDAR, THOMAS PAUL THORSTAD, STEPHEN TINGLEY, DONALD H. VALLONE, JR., ERIC GLENN WASHINGTON, DWAYNE WIGGLESWORTH, RODNEY J. WILLIAMS, SCIPIO WILLIAMS, JR., JOHNNY ADAM WILLIAMSON, WILLIAM ELLIS WINTER, DONALD ELBERAN WOOLLETT, CRAIG WYCHE, JEFFREY D. YOUNG, MARVIN ALBRIGHT, PABLO ARROYO, ANTHONY BANKS, RODNEY DARRELL BURNETTE, FRANK COMES, JR., GLENN DOLPHIN, FREDERICK DANIEL EAVES, CHARLES FRYE, TRUMAN DALE GARNER, LARRY GERLACH, JOHN HLYWIAK, ORVAL HUNT, JOSEPH P. JACOBS, BRIAN KIRKPATRICK, BURNHAM MATTHEWS, TIMOTHY MITCHELL, LOVELLE "DARRELL" MOORE, JEFFREY NASHTON, JOHN OLIVER, PAUL RIVERS, STEPHEN RUSSELL, DANA SPAULDING, CRAIG JOSEPH SWINSON, MICHAEL TOMA, DANNY WHEELER, THOMAS D. YOUNG, LILLA WOOLLETT ABBEY, JAMES ABBOTT, MARY ABBOTT (Estate of), ELIZABETH ADAMS, EILEEN PRINDEVILLE AHLQUIST, MIRALDA ALARCON (JUDITH MAITLAND), ANNE ALLMAN, ROBERT ALLMAN, THEODORE ALLMAN (Estate of), DIANNE MARGARET ALLMAN ("MAGGIE"), MARGARET

E. ALVAREZ, KIMBERLY F. ANGUS, DONNIE BATES, JOHNNY BATES, LAURA
BATES, MARGIE BATES, MONTY BATES, THOMAS BATES, JR., THOMAS C.
BATES, SR., MARY E. BAUMGARTNER, ANTHONY BAYNARD, BARRY
BAYNARD, EMERSON BAYNARD, PHILIP BAYNARD, THOMASINE
BAYNARD, TIMOTHY BAYNARD, WAYNE BAYNARD, STEPHEN BAYNARD,
ANNA BEARD, MARY ANN BECK, ALUE BELMER, ANNETTE BELMER,
CLARENCE BELMER, COLBY KEITH BELMER, DENISE BELMER, DONNA
BELMER, FAYE BELMER, KENNETH BELMER, LUDDIE BELMER, SHAWN
BIELLOW, MARY FRANCES BLACK, DONALD BLANKENSHIP, JR., DONALD
BLANKENSHIP, SR., MARY BLANKENSHIP (Estate of), ALICE BLOCKER,
DOUGLAS BLOCKER, JOHN R. BLOCKER, ROBERT BLOCKER, JAMES
BOCCIA, JOSEPH BOCCIA, SR., PATRICIA BOCCIA, RAYMOND BOCCIA,
RICHARD BOCCIA, RONNIE (VERONICA) BOCCIA, LETICIA BODDIE, ANGELA
BOHANNON, ANTHONY BOHANNON, CARRIE BOHANNON, DAVID
BOHANNON, EDNA BOHANNON, LEON BOHANNON, SR., RICKI BOHANNON,
BILLIE JEAN BOLINGER, JOSEPH BOULOS, LYDIA BOULOS, MARIE BOULOS,
REBECCA BOWLER, LAVON BOYETT, NORMAN E. BOYETT, JR. (Estate of),
THERESA U. ROTH BOYETT, WILLIAM A. BOYETT, SUSAN SCHNORF
BREEDEN, DAMION BRISCOE, CHRISTINE BROWN, ROSANNE BRUNETTE,
MARY LYNN BUCKNER, CLAUDE BURLEY (Estate of), WILLIAM DOUGLAS
BURLEY (Estate of), MYRA BURLEY, KATHLEEN CALABRO, RACHEL
CALDERA, AVENELL CALLAHAN, MICHAEL CALLAHAN, PATRICIA (PATSY
ANN) CALLOWAY, ELISA ROCK CAMARA, THERESA RIGGS CAMARA,
CANDACE CAMPBELL, CLARE CAMPUS, ELAINE CAPOBIANCO, FLORENE
MARTIN CARTER, PHYLLIS A. CASH, THERESA CATANO, BRUCE CEASAR,
FRANKLIN CEASAR, FREDRICK CEASAR, ROBBIE NELL CEASAR, SYBIL
CEASAR, CHRISTINE DEVLIN CECCA, TAMMY CHAPMAN, JAMES CHERRY,
SONIA CHERRY, ADELE H. CHIOS, JANA M. CHRISTIAN, SHARON ROSE
CHRISTIAN, SUSAN CIUPASKA, LESHUNE STOKES CLARK, ROSEMARY
CLARK, MARY ANN COBBLE, KAREN SHIPP COLLARD, JENNIFER COLLIER,
MELIA WINTER COLLIER, DEBORAH M. COLTRANE, JAMES N. CONLEY, JR.,
ROBERTA LI CONLEY, CHARLES F. COOK, ELIZABETH A. COOK, MARY A.
COOK (Estate of), ALAN TRACY COPELAND, BETTY COPELAND, DONALD
COPELAND, BLANCHE CORRY, HAROLD COSNER, JEFFREY COSNER,
LEANNA COSNER, MARVA LYNN COSNER (Estate of), CHERYL COSSABOOM,
BRYAN THOMAS COULMAN, CHRISTOPHER J. COULMAN, DENNIS P.
COULMAN, LORRAINE M. COULMAN, ROBERT D. COULMAN, ROBERT LOUIS
COULMAN, CHARLITA MARTIN COVINGTON, AMANDA CROUCH, MARIE
CRUDALE, EUGENE CYZICK, LYNN DALLACHIE, ANNE DEAL, LYNN SMITH
DERBYSHIRE, THERESA DESJARDINS, CHRISTINE DEVLIN, DANIEL DEVLIN,
GABRIELLE DEVLIN, RICHARD DEVLIN, SEAN DEVLIN, ROSALIE DONAHUE
(MILANO), ASHLEY DORAY, REBECCA DOSS, CHESTER DUNNIGAN,
ELIZABETH ANN DUNNIGAN, MICHAEL DUNNIGAN, WILLIAM DUNNIGAN,
CLAUDINE DUNNIGAN, JANICE THORSTAD EDQUIST, MARY RUTH ERVIN,
BARBARA ESTES, CHARLES ESTES, FRANK ESTES, LORI FANSLER, ANGELA
DAWN FARTHING, ARLINGTON FERGUSON, HILTON FERGUSON, LINDA
SANDBACK FISH, NANCY BROCKSBANK FOX, TIA FOX, TAMMY FRESHOUR,
RUBY FULCHER, BARBARA GALLAGHER, BRIAN GALLAGHER, JAMES
GALLAGHER (Estate of), JAMES GALLAGHER, JR., KEVIN GALLAGHER,
MICHAEL GALLAGHER, DIMITRI GANGUR, MARY GANGUR, JESS GARCIA,
RONALD GARCIA, ROXANNE GARCIA, RUSSELL GARCIA, VIOLET GARCIA,
SUZANNE PERRON GARZA, JEANNE GATTEGNO, ARLENE GHUMM, ASHLEY
GHUMM, BILL GHUMM, EDWARD GHUMM, HILDEGARD GHUMM, JEDAIAH

GHUMM (Estate of), JESSE GHUMM, LEROY GHUMM, MORONICA GHUMM, DONALD GIBLIN, JEANNE GIBLIN, MICHAEL GIBLIN, TIFFANY GIBLIN, VALERIE GIBLIN, WILLIAM GIBLIN, THAD GILFORD-SMITH, REBECCA GINTONIO, DAWN GOFF, CHRISTINA GORCHINSKI, JUDY GORCHINSKI, KEVIN GORCHINSKI, VALERIE GORCHINSKI, ALICE GORDON, JOSEPH GORDON, LINDA GORDON, NORRIS GORDON (Estate of), PAUL GORDON, ANDREA GRANT, DEBORAH GRAVES, DEBORAH GREEN, LIBERTY QUIRANTE GREGG, ALEX GRIFFIN, CATHERINE E. GRIMSLEY, MEGAN GUMMER, LYDA WOOLLETT GUZ, DARLENE HAIRSTON, TARA HANRAHAN, MARY CLYDE HART, BRENDA HASKILL, JEFFREY HASKELL, KATHLEEN S. HEDGE, CHRISTOPHER TODD HELMS, MARVIN R. HELMS, DORIS HESTER, CLIFTON HILDRETH, JULIA HILDRETH, MARY ANN HILDRETH, MICHAEL WAYNE HILDRETH, SHARON A. HILTON, DONALD HOLBERTON, PATRICIA LEE HOLBERTON, THOMAS HOLBERTON, TANGIE HOLLIFIELD, DEBRA HORNER, ELIZABETH HOUSE, JOYCE A. HOUSTON, TAMMY CAMARA HOWELL, LISA H. HUDSON, LORENZO HUDSON, LUCY HUDSON, RUTH HUDSON, SAMUEL HUDSON (Estate of), WILLIAM J. HUDSON, SUSAN THORSTAD HUGIS (Estate of), NANCY TINGLEY HURLBURT, CYNTHIA PERRON HURSTON, EDWARD IACOVINO, SR. (Estate of), ELIZABETH IACOVINO, DEBORAH INNOCENZI, KRISTIN INNOCENZI, MARK INNOCENZI, PAUL INNOCENZI, IV, BERNADETTE JACCOM, JOHN JACKOWSKI, JR., JOHN JACKOWSKI, SR., VICTORIA JACOBUS, ELAINE JAMES, NATHALIE C. JENKINS, STEPHEN JENKINS, REBECCA JEWETT, LINDA MARTIN JOHNSON, RAY JOHNSON, RENNITTA STOKES JOHNSON, SHERRY JOHNSON, CHARLES JOHNSTON, EDWIN JOHNSTON, MARY ANN JOHNSTON, ZANDRA LARIVIERE JOHNSTON, ALICIA JONES, CORENE MARTIN JONES, KIA BRISCOE JONES, MARK JONES, OLLIE JONES, SANDRA D. JONES, SYNOVURE JONES (Estate of), ROBIN COPELAND JORDAN, SUSAN SCOTT JORDAN, JOYCE JULIAN, KARL JULIAN, NADA JURIST, ADAM KEOWN, BOBBY KEOWN, JR., BOBBY KEOWN, SR., DARREN KEOWN, WILLIAM KEOWN, MARY JOE KIRKER, KELLY KLUCK, MICHAEL KLUCK, JOHN D. KNIPPLE (Estate of), JOHN R. KNIPPLE, PAULINE KNIPPLE (Estate of), SHIRLEY L. KNOX, DOREEN KREISCHER, FREAS H. KREISCHER, JR., CYNTHIA D. LAKE, WENDY L. LANGE, JAMES LANGON, III, EUGENE LARIVIERE, JANET LARIVIERE, JOHN M. LARIVIERE, LESLEY LARIVIERE, MICHAEL LARIVIERE, NANCY LARIVIERE, RICHARD LARIVIERE, RICHARD G. LARIVIERE (Estate of), ROBERT LARIVIERE, WILLIAM LARIVIERE, CATHY L. LAWTON, HEIDI CRUDALE LEGAULT, CLARENCE LEMNAH (Estate of), ETTA LEMNAH, FAY LEMNAH, HAROLD LEMNAH, MARLYS LEMNAH, ROBERT LEMNAH, RONALD LEMNAH, ANNETTE R. LIVINGSTON, JOSEPH R. LIVINGSTON, IV, JOSEPH R. LIVINGSTON, JR. (Estate of), ROBIN M. LYNCH, EARL LYON, FRANCISCO LYON, JUNE LYON, MARIA LYON, PAUL D. LYON, SR., VALERIE LYON, HEATHER MACROGLOU, KATHLEEN DEVLIN MAHONEY, KENTY MAITLAND, LEYSNAL MAITLAND, SAMUEL MAITLAND, SR., SHIRLA MAITLAND, VIRGINIA BOCCIA MARSHALL, JOHN MARTIN, PACITA MARTIN, RENERIO MARTIN, RUBY MARTIN, SHIRLEY MARTIN, MARY MASON, CRISTINA MASSA, EDMUND MASSA, JOAO ("JOHN") MASSA, JOSE ("JOE") MASSA, MANUEL MASSA, JR., RAMIRO MASSA, MARY MCCALL, THOMAS MCCALL (Estate of), VALERIE MCCALL, GAIL MCDERMOTT, JULIA A. MCFARLIN, GEORGE MCMAHON, MICHAEL MCMAHON, PATTY MCPHEE, DARREN MENKINS, GREGORY MENKINS, MARGARET MENKINS, RICHARD H. MENKINS, JAY T. MEURER, JOHN MEURER, JOHN THOMAS MEURER, MARY LOU MEURER, MICHAEL MEURER, PENNY MEYER, ANGELA MILANO,

PETER MILANO, JR., EARLINE MILLER, HENRY MILLER, PATRICIA MILLER, HELEN MONTGOMERY, BETTY MOORE, HARRY MOORE, KIMBERLY MOORE, MARY MOORE, MELISSA LEA MOORE, MICHAEL MOORE (Estate of), ELIZABETH PHILLIPS MOY, DEBRA MYERS, GENEVA MYERS, HARRY A. MYERS, BILLIE ANN NAIRN, CAMPBELL J. NAIRN, III, CAMPBELL J. NAIRN, JR. (Estate of), WILLIAM P. NAIRN, RICHARD NORFLEET, DEBORAH O'CONNOR, PEARL OLANIJI, BERTHA OLSON (Estate of), KAREN L. OLSON, RANDAL D. OLSON, ROGER S. OLSON, RONALD J. OLSON, SIGURD OLSON (Estate of), DAVID OWENS, DEANNA OWENS, FRANCES OWENS, JAMES OWENS (Estate of), STEVEN OWENS, CONNIE MACK PAGE, JUDITH K. PAGE, LISA MENKINS PALMER, GERALDINE PAOLOZZI, MAUREEN PARE, HENRY JAMES PARKER, SHARON PARKER, HELEN M. PEARSON, JOHN L. PEARSON, JR., SONIA PEARSON, BRETT PERRON, DEBORAH JEAN PERRON, MICHELLE PERRON, RONALD R. PERRON, MURIEL PERSKY, DEBORAH D. PETERSON, SHARON CONLEY PETRY, SANDRA PETRICK, DONNA VALLONE PHELPS, HAROLD PHILLIPS, JOHN ARTHUR PHILLIPS, SR., DONNA TINGLEY PLICKYS, MARGARET AILEEN POLLARD, STACEY YVONNE POLLARD, LEE HOLLAN PREVATT, VICTOR THORNTON PREVATT, JOHN PRICE, JOSEPH PRICE, BARBARA D. PRINDEVILLE (Estate of), KATHLEEN TARA PRINDEVILLE, MICHAEL PRINDEVILLE, PAUL PRINDEVILLE, SEAN PRINDEVILLE, BELINDA J. QUIRANTE, EDGAR QUIRANTE, GODOFREDO QUIRANTE (Estate of), MILTON QUIRANTE, SABRINA QUIRANTE, SUSAN RAY, LAURA M. REININGER, ALAN RICHARDSON, BEATRICE RICHARDSON, CLARENCE RICHARDSON, ERIC RICHARDSON, LYNETTE RICHARDSON, VANESSA RICHARDSON, PHILIECE RICHARDSON-MILLS, MELROSE RICKS, BELINDA QUIRANTE RIVA, BARBARA ROCKWELL, LINDA ROSE ROONEY, TARA SMITH, TAMMI RUARK, JULIANA RUDKOWSKI, MARIE MCMAHON RUSSELL, ALICIA LYNN SANCHEZ, ANDREW SAULS, HENRY CALEB SAULS, RILEY A. SAULS, MARGARET MEDLER SCHNORF, RICHARD SCHNORF (Brother), RICHARD SCHNORF (Father), ROBERT SCHNORF, BEVERLY SCHULTZ, DENNIS JAMES SCHULTZ, DENNIS RAY SCHULTZ, FRANK SCIALABBA, JACQUELINE SCIALABBA, SAMUEL SCOTT SCIALABBA, JON CHRISTOPHER SCOTT, KEVIN JAMES SCOTT, LARRY L. SCOTT (Estate of), MARY ANN SCOTT, SHERIA SCOTT, STEPHEN ALLEN SCOTT, JACKLYN SEGUERRA, BRYAN RICHARD SHIPP, JAMES DAVID SHIPP, JANICE SHIPP, MAURICE SHIPP, PAULINE SHIPP, RAYMOND DENNIS SHIPP, RUSSELL SHIPP, SUSAN J. SINSIOCO, ANA SMITH-WARD, ANGELA JOSEPHINE SMITH (Estate of), BOBBIE ANN SMITH, CYNTHIA SMITH, DONNA MARIE SMITH, ERMA SMITH, HOLLY SMITH, IAN SMITH, JANET SMITH, JOSEPH K. SMITH, III, JOSEPH K. SMITH, JR., KEITH SMITH, KELLY B. SMITH, SHIRLEY L. SMITH, TADGH SMITH, TERRENCE SMITH, TIMOTHY B. SMITH, JOCELYN J. SOMMERHOF, JOHN SOMMERHOF, WILLIAM J. SOMMERHOF, DOUGLAS SPENCER, CHRISTY WILLIFORD STELPFLUG, JOSEPH STELPFLUG, KATHY NATHAN STELPFLUG, LAURA BARFIELD STELPFLUG, PEGGY STELPFLUG, WILLIAM STELPFLUG, HORACE STEPHENS, SR., JOYCE STEPHENS, KEITH STEPHENS, DONA STOCKTON, DONALD STOCKTON (Estate of), RICHARD STOCKTON, IRENE STOKES, NELSON STOKES, JR., NELSON STOKES, SR. (Estate of), ROBERT STOKES, GWENN STOKES-GRAHAM, MARCUS D. STURGHILL, MARCUS L. STURGHILL, JR., NAKEISHA LYNN STURGHILL, DOREEN SUNDAR, MARGARET TELLA, SUSAN L. TERLSON, MARY ELLEN THOMPSON, ADAM THORSTAD, BARBARA THORSTAD, JAMES THORSTAD, JR., JAMES THORSTAD, SR., JOHN THORSTAD, RYAN THORSTAD, BETTY ANN THURMAN, BARBARA TINGLEY, RICHARD L. TINGLEY, RUSSELL

TINGLEY, KEYSHA TOLLIVER, MARY ANN TUREK, KAREN VALENTI,
ANTHONY VALLONE, DONALD H. VALLONE, TIMOTHY VALLONE, LEONA
MAE VARGAS, DENISE VOYLES, ILA WALLACE, KATHRYN THORSTAD
WALLACE, RICHARD J. WALLACE, BARBARA THORSTAD WARWICK, LINDA
WASHINGTON, VANCINE WASHINGTON, KENNETH WATSON, DIANE
WHITENER, DARYL WIGGLESWORTH, DARRIN A. WIGGLESWORTH, HENRY
WIGGLESWORTH, MARK WIGGLESWORTH, ROBYN WIGGLESWORTH,
SANDRA WIGGLESWORTH, SHAWN WIGGLESWORTH, DIANNE STOKES
WILLIAMS, GUSSIE MARTIN WILLIAMS, JANET WILLIAMS, JOHNNY
WILLIAMS, RHONDA WILLIAMS, RONALD WILLIAMS, RUTH WILLIAMS,
SCIPIO J. WILLIAMS, WESLEY WILLIAMS, DELMA WILLIAMS-EDWARDS,
TONY WILLIAMSON, JEWELENE WILLIAMSON, MICHAEL WINTER,
BARBARA WISEMAN, PHYLLIS WOODFORD, JOYCE WOODLE, BEVERLY
WOOLLETT, PAUL WOOLLETT, MELVINA STOKES WRIGHT, PATRICIA
WRIGHT, GLENN WYCHE, JOHN WYCHE, JOHN F. YOUNG, JOHN W. YOUNG,
JUDITH CAROL YOUNG, SANDRA RHODES YOUNG, JOANNE ZIMMERMAN,
STEPHEN THOMAS ZONE, PATRICIA THORSTAD ZOSSO, JAMAAL MUATA
ALI, MARGARET ANGELONI, JESUS ARROYO, MILAGROS ARROYO,
OLYMPIA CARLETTA, KIMBERLY CARPENTER, JOAN COMES, PATRICK
COMES, CHRISTOPHER COMES, FRANK COMES, SR., DEBORAH CRAWFORD,
BARBARA DAVIS, ALICE WARREN FRANKLIN, PATRICIA GERLACH, TRAVIS
GERLACH, MEGAN GERLACH, ARMINDA HERNANDEZ, MARGARET
HLYWIAK, PETER HLYWIAK, JR., PETER HLYWIAK, SR., PAUL HLYWIAK,
JOSEPH HLYWIAK, CYNTHIA LOU HUNT, ROSA IBARRO, ANDREW SCOTT
JACOBS, DANIEL JOSEPH JACOBS, DANITA JACOBS, KATHLEEN
KIRKPATRICK, GRACE LEWIS, LISA MAGNOTTI, WENDY MITCHELL, JAMES
OTIS MOORE (Estate of), JOHNNEY S. MOORE (Estate of), MARVIN S. MOORE,
ALIE MAE MOORE, JONNIE MAE MOORE-JONES, ALEX W. NASHTON (Estate
of), PAUL OLIVER, RILEY OLIVER, MICHAEL JOHN OLIVER, ASHLEY E.
OLIVER, PATRICK S. OLIVER, KAYLEY OLIVER, TANYA RUSSELL, WANDA
RUSSELL, JASON RUSSELL, CLYDIA SHAVER, SCOTT SPAULDING, CECILIA
STANLEY, MARY STILPEN, KELLY SWANK, KENNETH J. SWINSON (Estate of),
INGRID M. SWINSON (Estate of), DANIEL SWINSON, WILLIAM SWINSON,
DAWN SWINSON, TERESA SWINSON, BRONZELL WARREN, JESSICA
WATSON, AUDREY WEBB, JONATHAN WHEELER, BENJAMIN WHEELER,
MARLIS "MOLLY" WHEELER (Estate of), KERRY WHEELER, ANDREW
WHEELER, BRENDA JUNE WHEELER, JILL WOLD, NORA YOUNG (Estate of),
JAMES YOUNG, ROBERT YOUNG (Estate of)

*The Heiser Judgment Creditors*

THE ESTATE OF MICHAEL HEISER, deceased; GARY HEISER; FRANCIS HEISER;
THE ESTATE OF LELAND TIMOTHY HAUN, deceased; IBIS S. HAUN;
MILAGRITOS PEREZ-DALIS; SENATOR HAUN; RICHARD W. WOOD;
KATHLEEN M. WOOD; SHAWN M. WOOD; DENISE M. EICHSTAEDT;
ANTHONY W. CALRETTE; LEWIS W. CARTRETTE; SANDRA M. WETMORE;
THE ESTATE OF MILLARD D. CAMPBELL, deceased; MARIE R. CAMPBELL;
BESSIE A. CAMPBELL; THE ESTATE OF KEVIN J. JOHNSON, deceased; SHYRL
L. JOHNSON; KEVIN JOHNSON, a minor, by his legal guardian Shyrl L. Johnson;
NICHOLAS A. JOHNSON, a minor, by his legal guardian Shyrl L. Johnson; BRIDGET
BROOKS; JAMES R. RIMKUS; ANNE M. RIMKUS; THE ESTATE OF BRENT E.
MARTHALER, deceased; KATIE L. MARTHALER; SHARON MARTHALER;
HERMAN C. MARTHALER III; MATTHEW MARTHALER; KIRK MARTHALER;
THE ESTATE OF THANH VAN NGUYEN, deceased; CHRISTOPHER R. NGUYEN;

THE ESTATE OF JOSHUA E. WOODY, deceased; DAWN WOODY; BERNADINE
R. BEEKMAN; TRACY M. SMITH; JONICA L. WOODY; TIMOTHY WOODY; THE
ESTATE OF PETER J. MORGERA, deceased; MICHAEL MORGERA; THOMAS
MORGERA; THE ESTATE OF KENDALL KITSON, JR., deceased; NANCY R.
KITSON; KENDALL K. KITSON; STEVE K. KITSON; NANCY A. KITSON; THE
ESTATE OF CHRISTOPHER ADAMS, deceased; CATHERINE ADAMS; JOHN E.
ADAMS; PATRICK D. ADAMS; MICHAEL T. ADAMS; DANIEL ADAMS; MARY
YOUNG; ELIZABETH WOLF; WILLIAM ADAMS; THE ESTATE OF
CHRISTOPHER LESTER, deceased; CECIL H. LESTER; JUDY LESTER; CECIL H.
LESTER, JR.; JESSICA F. LESTER; LAWRENCE E. TAYLOR; VICKIE L. TAYLOR;
STARLINA D. TAYLOR; THE ESTATE OF PATRICK P. FENNIG, deceased;
THADDEUS C. FENNIG; CATHERINE FENNIG; PAUL D. FENNIG
and MARK FENNIG

*The Greenbaum Judgment Creditors*

STEVEN M. GREENBAUM, on behalf of himself individually and as Administrator of
the Estate of JUDITH (SHOSHANA) LILLIAN GREENBAUM, deceased;
ALAN D. HAYMAN and SHIRLEE HAYMAN

*The Acosta Judgment Creditors*

CARLOS ACOSTA; MARIA ACOSTA; TOVA ETTINGER;
IRVING FRANKLIN (on his own behalf and as Administrator of the Estate
of the late IRMA FRANKLIN); BARUCH KAHANE; LIBBY KAHANE
(on her own behalf and as Administratrix of the Estate of the late MEIR KAHANE);
ETHEL J. GRIFFIN (as Administratrix of the Estate of the late BINYAMIN KAHANE);
NORMAN KAHANE (on his own behalf and as Executor of the Estate of the late
SONIA KAHANE); and CIPPORAH KAPLANCARLOS ACOSTA; MARIA ACOSTA;
IRVING FRANKLIN; ESTATE OF IRMA FRANKLIN; SONYA KAHANE;
CIPPORAH KAPLAN; TOVA ETTINGER; BARUCH KAHANE; ETHEL GRIFFIN as
administrator of BINYAMIN KAHANE's Estate and RABBI NORMAN KAHANE

*The Levin Judgment Creditors*

JEREMY LEVIN and DR. LUCILLE LEVIN

*The Valore Judgment Creditors*

ANGEL ALVARADO, GERALDO ALVARADO, GRISSELLE ALVARADO, LUIS
ALVARADO, LUISA ALVARADO, MARIA ALVARADO, MARTA ALVARADO,
PEDRO ALVARADO, JR., YOLANDE ALVARADO, ZORAIDA ALVARADO,
DENNIS JACK ANDERSON, LOLITA M. ARNOLD, ESTATE OF MOSES
ARNOLD, JR., CHERYL BASS, ESTATE OF DAVID L. BATTLE, LISA ANN BECK,
BETTY J. BOLEN, KEITH EDWIN BOLEN, NEAL SCOTT BOLEN, SHELDON H.
BOLEN, CATHERINE BONK, JOHN BONK, SR., KEVIN BONK, THOMAS BONK,
EDWARD J. BROOKS, PATRICIA A. BROOKS, TIMOTHY BROOKS, MARION
DIGIOVANNI, SHERRY LYNN FIEDLER, MARILOU FLUEGEL, ROBERT
FLUEGEL, THOMAS A. FLUEGEL, WANDA FORD, EVANS HAIRSTON, FELICIA
HAIRSTON, JULIA BELL HAIRSTON, BENNIE HARRIS, MICHAEL HARRIS,
ESTATE OF MATILDE HERNANDEZ, JR., HENRY DURBAN HUKILL, MARK
ANDREW HUKILL, MATTHEW SCOTT HUKILL, MELISSA HUKILL, MEREDITH
ANN HUKILL, MITCHELL CHARLES HUKILL, MONTE HUKILL, VIRGINIA
ELLEN HUKILL, CATHERIN BONK HUNT, STORM JONES, PENNI JOYCE, CARL
ANDREW KIRKWOOD, JR., CARL KIRKWOOD, SR., JEFF KIRKWOOD,
SHIRLEY KIRKWOOD, SHEILA M. KORZ, PATRICIA KRONENBITTER, BETTY
LAISE, BILL LAISE, KRIS LAISE, BILL MACROGLOU, JAMES MACROGLOU,
LORRAINE MACROGLOU, KATHY MCDONALD, EDWARD JOSEPH

MCDONOUGH, EDWARD W. MCDONOUGH, SEAN MCDONOUGH, ESTATE OF
JOHN MUFFLER, MARCY LYNN PARSON, DONALD R. PONTILLO, DEBORAH
SPENCER RHOSTO, ESTATE OF LUIS ROTONDO, ESTATE OF ROSE
ROTONODO, ESTATE OF PHYLLIS SANTOSERRE, ANNA MARIE SIMPSON,
LARRY H. SIMPSON, SR., RENEE EILEEN SIMPSON, ROBERT SIMPSON,
BELINDA SKARKA, DON SELBE, ELOISE F. SELBE, JOHN E. SELBE, ESTATE
OF JAMES SILVIA, LYNNE MICHOL SPENCER, ALLISON THOMPSON, ISALINE
THOMPSON, JOHNNY THOMPSON, WILLY G. THOMPSON, DEBORAH TRUE,
ANDRES ALVARADO TULL, ESTATE OF JOHN JAY TISHMACK, JANICE
VALORE, ORLANDO M. VALORE, JR., ORLANDO MICHAEL VALORE, SR.,
TERANCE J. VALORE, ESTATE OF LEONARD WARREN WALKER, ESTATE OF
WALTER EMERSON WINT, JR., SALLY JO WIRICK,
ESTATE OF JAMES YARBER

*The Murphy Judgment Creditors*

ELIZABETH MURPHY, THE ESTATE OF TERRENCE RICH, BRYAN HARRIS,
ARMANDO YBARRA, JOHN L'HEUREUX, KERRY L'HEUREUX, JANE
L'HEUREUX, MARY WELLS

---

STONE BONNER & ROCCO LLP
*Attorneys for the Peterson Amici Parties*
260 Madison Avenue, 17th Floor
New York, New York 10016
(212) 239-4340

FLEISCHMAN LAW FIRM
*Attorneys for the Valore Amici Parties*
565 Fifth Avenue, 7th Floor
New York, New York 10017
(212) 880-9567

STEVEN K. BARENTZEN
THE LAW OFFICE OF STEVEN BARENTZEN
*Attorneys for the Murphy Amici Parties*
1575 Eye Street, NW, Suite 300
Washington, DC 20005
(202) 289-4333

LAW OFFICES OF NEAL M. SHER
*Attorneys for the Heiser Amici Parties*
132 East 43rd Street, Suite 304
New York, New York 10017
(917) 409-0100

SUZELLE M. SMITH
DON HOWARTH
*Attorneys for Amici Jeremy Levin
and Dr. Lucille Levin*
523 West Sixth Street, Suite 728
Los Angeles, California 90014
(213) 955-9400

SASSON LAW PLLC
*Attorneys for the Greenbaum
and Acosta Amici Parties*
1350 Broadway, Suite 212
New York, New York 10018
(212) 949-7501

# **TABLE OF CONTENTS**

**PAGE**

INTERESTS OF THE AMICI CURIAE.................................................................1

ARGUMENT .......................................................................................................3

    I.    TO THE EXTENT THE DISTRICT COURT'S RULING
           SHOULD BE AFFIRMED, THE COURT SHOULD DO SO
           ON THE LIMITED GROUND THAT NORTH KOREA WAS
           NOT AND IS NOT A "TERRORIST PARTY" ...............................3

    II.   TRIA PREEMPTS STATE PROPERTY LAW ..................................5

    III.  IN THE EVENT THIS COURT CHOOSES TO ADDRESS IT,
           THE DISTRICT COURT'S INTERPRETATION OF TRIA IN
           DICTA SHOULD BE REVERSED.....................................................9

CERTIFICATE OF COMPLIANCE....................................................................18

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Altria Group, Inc. v. Good*,
    555 U.S. 70 (2008)................................................................................6

*Atchison, Topeka & Santa Fe Ry. Co. v. Buell*,
    480 U.S. 557 (1987)............................................................................13

*Bd. of Trs. of the Leland Stanford Junior Univ. v. Roche Molecular Sys.,
Inc.*,
    131 S. Ct. 2188 (2011)....................................................................9, 10

*Calderon-Cardona v. JPMorgan Chase Bank, N.A.*,
    No. 11-3283, 2011 WL 6155987 (S.D.N.Y. Dec. 7, 2011)..................3

*Davis v. Michigan Dep't of Treasury*, 489 U.S. 803 (1989) ...................10

*Export-Import Bank of the United States v. Asia Pulp & Paper Co., Ltd.*,
    609 F.3d 111 (2d Cir. 2010) ...............................................................8

*Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*,
    458 U.S. 141 (1982)..............................................................................5

*Hausler v. JPMorgan Chase Bank, N.A.*,
    740 F. Supp. 2d 525 (S.D.N.Y. 2010) ........................................passim

*Hausler v. JPMorgan Chase Bank, N.A.*,
    No. 09-10289, 2012 WL 601034 (S.D.N.Y. Feb. 22, 2012) .....................passim

*Heiser v. Islamic Republic of Iran*,
    807 F. Supp. 2d 9 (D.D.C. 2011)............................................6, 13, 14

*In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31 (D.D.C.
    2009) .....................................................................................................6

*Jama v. Immigration and Customs Enforcement*,
    543 U.S. 335 (2005)............................................................................14

ii

*Levin v. Bank of New York*,
   No. 09-5900, 2011 WL 812032 (S.D.N.Y. Mar. 4, 2011) ........................passim

*Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218 (1947) ............................5

*Roberts v. Sea-Land Services, Inc.*,
   132 S.Ct. 1350 (2012).......................................................10

*Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte, Ltd.*,
   585 F.3d 58 (2d Cir. 2009) .................................................8

*Smith ex rel. Estate of Smith v. Federal Res. Bank of N.Y.*,
   346 F.3d 264 (2d Cir. 2003) ...............................................5

*Weininger v. Castro*,
   462 F. Supp. 2d 457 (S.D.N.Y. 2006) .......................................12, 13

*Weinstein v. Islamic Republic of Iran*,
   609 F.3d 43 (2d Cir. 2010) ................................................5, 6, 13

STATUTES

28 U.S.C. § 1603(b)(2)........................................................14

28 U.S.C. § 1605(A)(g)(1) ....................................................14

28 U.S.C. § 1610(f)...........................................................13

28 U.S.C. § 1610(g) ..........................................................1, 6, 12, 13

Foreign Sovereign Immunities Act, 28 U.S.C. § 1602, *et seq*...................4

International Emergency Economic Powers Act, 50 U.S.C. §§ 1701 & 1702 .....6, 7

Notice, Rescission of Determination Regarding North Korea, 73 Fed. Reg.
   63540-01 (Oct. 24, 2008)...................................................11

N.Y. U.C.C. LAW § 4A-107, cmt. 3 .............................................8

N.Y. U.C.C. LAW § 4A-108, cmt. 1 .............................................8

N.Y. U.C.C. LAW § 4A-502 .....................................................7

iii

Terrorism Risk Insurance Act of 2002, Pub L. No. 107-297, 116 Stat. 2322, 28 U.S.C. § 1610 note ...................................................................................passim

Trading With the Enemy Act, 50 U.S.C. App. 5(b) .............................................6, 7

Article 4A of the Uniform Commercial Code ..........................................................7

University and Small Business Patent Procedures Act of 1980, 35 U.S.C. § 200, *et seq.* .............................................................................................................9

**OTHER AUTHORITIES**

31 C.F.R. part 510 ...................................................................................................11

31 C.F.R. part 515 ...................................................................................................11

31 C.F.R. part 538 ...................................................................................................11

31 C.F.R. part 544 ...................................................................................................11

31 C.F.R. part 595 ...................................................................................................11

148 Cong. Rec. S11524 (Nov. 19, 2002) ................................................................13

2001 "Terrorism Asset Report" ........................................................................11, 12

*Black's Law Dictionary* 1100 (7th ed. 1999) ..........................................................3

Fed. R. App. P. 20 .....................................................................................................1

Fed. R. App. P. 29 .....................................................................................................1

*Finding that the Islamic Republic of Iran is a Jurisdiction of Primary Money Laundering Concern*, The Financial Crimes Enforcement Network Treasury, dated 11/18/2011, *available at* www.treasury.gov/press-center/press-releases/.../Iran311Finding.pdf. ........................................................4

H.R. Rep. No. 107-779, 2002 U.S.C.C.A.N. ..........................................................13

iv

## INTERESTS OF THE *AMICI CURIAE*

The *amici curiae* comprise over one thousand victims and their family members and estates (collectively, "Amici") of a number of terrorist acts perpetrated by the Islamic Republic of Iran and its agencies and instrumentalities (collectively, "Iran"). Amici hold judgments against Iran based on its sponsorship of terrorist acts and are actively involved in post-judgment collection efforts to satisfy such judgments. Because Amici hold judgments based on acts of terrorism, they rely, in part, on the Terrorism Risk Insurance Act of 2002 ("TRIA"), Pub L. No. 107-297, 116 Stat. 2322, codified at 28 U.S.C. § 1610 note, and 28 U.S.C. § 1610(g) as the statutory grounds for enforcement of their judgments. At present, Amici are involved in numerous execution proceedings pending in courts throughout the United States, including courts in the Second Circuit, that could be affected by the Court's ruling in this matter.[1]

If this Court decides to affirm the trial court it should only be on the limited ground that North Korea was not a "terrorist party" at the time of the decision (and is not to this day). This Court need go no further to resolve this appeal. Adjudication of this case on any other ground may have a potentially deleterious

---

[1] Amici rely upon Fed. R. App. P. 20 as authority to file this brief and, in accordance with Fed. R. App. P. 29(c)(5), state that (1) no party's counsel authored the brief in whole or in part, (2) no party or party's counsel contributed money that was intended to fund preparing or submitting the brief, and (3) no person—other than the amici curiae, their members, or their counsel—contributed money that was intended to fund preparation or submission of the brief.

impact on the ability of victims of terrorism, such as Amici, to satisfy their judgments, while simultaneously allowing terrorist parties like Iran to shield their assets from judgment creditors. Therefore, if this Court chooses to evaluate other aspects of the District Court's decision (which we submit are dicta), Amici respectfully request that the Court do so narrowly in order to prevent unintended limitations on the availability of blocked assets to satisfy terrorism judgments. Caution is particularly warranted because a number of other cases involving designated terrorist parties – including certain of the Amici's judgment enforcement actions against Iran – present questions regarding property interests quite different from the electronic funds transfers ("EFTs") at issue in this matter.

In the event this Court chooses to resolve this appeal on grounds other than that North Korea is not a "terrorist party," the District Court's interpretation of TRIA § 201 and analysis regarding EFTs should be reversed. These portions of the District Court's opinion thwart the express goals of Congress and the President to compensate victims of terrorism, like Amici, and redefine federally regulated property interests in contravention of the Office of Foreign Assets Control's ("OFAC") sanctions regimes. Amici urge this Court to adopt the analysis and holdings of other courts in this Circuit which have held that victims of terrorism may execute upon EFTs under TRIA. *See Hausler v. JPMorgan Chase Bank, N.A.*, 740 F. Supp. 2d 525 (S.D.N.Y. 2010) ("*Hausler I*"); *Levin v. Bank of New*

*York*, No. 09-5900, 2011 WL 812032 (S.D.N.Y. Mar. 4, 2011); *Hausler v. JPMorgan Chase Bank, N.A.*, No. 09-10289, 2012 WL 601034 (S.D.N.Y. Feb. 22, 2012) ("*Hausler II*").[2]

## ARGUMENT

### I. TO THE EXTENT THE DISTRICT COURT'S RULING SHOULD BE AFFIRMED, THE COURT SHOULD DO SO ON THE LIMITED GROUND THAT NORTH KOREA WAS NOT AND IS NOT A "TERRORIST PARTY"

Section 201 of TRIA permits execution upon blocked assets of a "terrorist party." The District Court in this case held that Appellant could not meet the statutory requirements of TRIA because North Korea was not a "state sponsor of terrorism" or a "terrorist organization" at the time the Appellant brought forth its claim and, therefore, does not qualify as a "terrorist party" pursuant to TRIA. *Calderon-Cardona v. JPMorgan Chase Bank, N.A.*, No. 11-3283, 2011 WL 6155987, at *3-8 (S.D.N.Y. Dec. 7, 2011). The remainder of the District Court's decision was unnecessary dicta that did nothing to determine the issue in the case itself. *See Black's Law Dictionary* 1100 (7th ed. 1999) (defining "obiter dictum" (often shortened to "dictum") as "[a] judicial comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case"). The fact that the District Court concluded that North Korea was not and is

---

[2] The decision of the *Hausler* court is currently on appeal and will be heard in tandem with this appeal.

not a terrorist party is dispositive of the entire action. The dicta of the District Court's decision, if affirmed, could ultimately reach far beyond the scope of the facts of the case and have unintended consequences for judgment creditors of actual terrorist parties. For example, a terrorist party possessing a beneficial interest in blocked property might, under a broad reading of the District Court's decision, intentionally disguise its rights in order to avoid the execution consequences of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602, *et seq.* ("FSIA") and TRIA. This is a particularly critical issue for Amici, who are trying to satisfy judgments against Iran, given the Department of Treasury's identification of Iran as a jurisdiction of primary money laundering concern that "willingly engage[s] in deceptive practices to disguise illicit conduct, evade international sanctions, and undermine the efforts of responsible regulatory agencies." *Finding that the Islamic Republic of Iran is a Jurisdiction of Primary Money Laundering Concern*, The Financial Crimes Enforcement Network Treasury, dated 11/18/2011, *available at* www.treasury.gov/press-center/press-releases/.../Iran311Finding.pdf. Accordingly, if the Court affirms the District Court, it should only do so on the limited basis that North Korea did not qualify as a terrorist party without reaching the merits of the rest of the District Court's decision.

4

## II.  TRIA PREEMPTS STATE PROPERTY LAW

The FSIA provides the sole substantive basis for executing upon property of a foreign state and its agencies and instrumentalities.  *See Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 48 (2d Cir. 2010) (citing 28 U.S.C. § 1609).  Likewise, the assets at issue here are blocked purely by virtue of federal law.  The majority of courts in this Circuit recognize that TRIA preempts any conflicting provisions of law concerning collection, attachment and garnishment of blocked assets.  *See Weinstein,* 609 F.3d at 54; *Hausler I*, 740 F. Supp. 2d at 535-36; *Levin*, 2011 WL 812032, at *17; *Hausler II*, 2012 WL 601034, at *11 (recognizing that TRIA provides for execution upon "assets that would otherwise be blocked" under OFAC regulations) (citing *Smith ex rel. Estate of Smith v. Federal Res. Bank of N.Y.*, 346 F.3d 264, 270–71 (2d Cir. 2003)).

Preemption may be inferred because (1) "[t]he scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," or (2) "the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).   The Supreme Court has long recognized that "[t]he purpose of Congress is the ultimate touchstone in every pre-

5

emption case." *Altria Group, Inc. v. Good*, 555 U.S. 70, 76 (2008) (internal quotations and citations omitted). Preemption of state substantive property law is consistent with the overarching goal of the FSIA to establish a comprehensive statutory scheme. *Weinstein*, 609 F.3d at 50; *Hausler II,* 2012 WL 601034, at *5 ("Though Congress contemplated the use of state *procedural* law to enforce judgments, . . . TRIA represents Congress's recognition that federal law must provide the substantive rules governing the recovery of terrorism-related judgments.") (emphasis added).[3]

OFAC's federal sanctions programs are pervasive and govern all assets in which the regulated entity or foreign state has an interest. Together, the FSIA and OFAC's sanctions programs advance the dominant and exclusive federal interests of protecting national security and regulating affairs with foreign nations, leaving

---

[3] Similarly, under 28 U.S.C. § 1610(g), federal *substantive* law governs the right to execute, whereas state law merely provides the *process* for executing. *Heiser v. Islamic Republic of Iran*, 807 F. Supp. 2d 9, 25 (D.D.C. 2011) ("While it is true that DC law provides the *process* by which plaintiffs may enforce their judgment, the *substantive* basis for their right to execution is not found in DC law, but in § 1610(g) of the FSIA—a federal statute.") (emphasis added); *In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 82 (D.D.C. 2009) (noting that the "federal policy aimed at deterring foreign state sponsors of terror should now fall squarely under federal law and control"). Like TRIA, Congress included in 28 U.S.C. 1610(g) references to IEEPA and TWEA, which demonstrates further that Congress relied upon the broad property definitions contained in OFAC's sanctions regimes when crafting the legislation. *See* 28 U.S.C. § 1610(g)(2) (noting that property shall not be immune "because the property is regulated by the United States Government by reason of action taken against that foreign state under [TWEA or IEEPA]").

6

no room for state substantive law to supplement (or contradict). The district courts in *Hausler I, Levin, and Hausler II* each recognized that TRIA's definition of "blocked assets" expressly references the regulations pursuant to which the assets are blocked, and, therefore, it is these blocking regulations that dictate what interest in property subjects a terrorist party's assets to execution. *Hausler II*, 2012 WL 601034, at *5; *Levin*, 2011 WL 812032, at *17; *Hausler I*, 740 F. Supp. 2d at 532; *see also* TRIA § 201(d)(2) (defining "blocked asset" with reference to the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701 & 1702 ("IEEPA") and Trading With the Enemy Act, 50 U.S.C. App. 5(b) ("TWEA")); *Smith ex rel. Estate of Smith*, 346 F. 3d at 271 (noting that TRIA's definition of blocked assets must be interpreted by in accordance with IEEPA).[4]

Article 4A of the Uniform Commercial Code ("UCC"), a body of state law, is therefore preempted by TRIA's and OFAC's sanctions programs to the extent that property interests defined by UCC Article 4A, or other state law, directly conflict with federal law. For example, while federal law establishes that parties have interests in mid-stream EFTs -- otherwise banks would not be required to block these transactions -- under N.Y. U.C.C. Law § 4A-502, originators and beneficiaries have no property interest in funds located at an intermediary bank.

---

[4] In addition, as discussed by the Appellant, TRIA § 201's "notwithstanding" language evinces Congress' intent to preempt state property law in the context of blocked assets. *See* Appellant's Br. at 33-35.

Indeed, the text of UCC Article 4A recognizes its own preemption by OFAC's regulations and property definitions. *See*, *e.g.*, N.Y. U.C.C. LAW § 4A-107, cmt. 3 ("Although the terms of Article 4A apply to funds transfers involving Federal Reserve Banks, *federal preemption would make ineffective any Article 4A provision that conflicts with federal law.*") (emphasis added); N.Y. U.C.C. LAW § 4A-108, cmt. 1 ("Section 4A-108 excludes a funds transfer from Article 4A if any part of the transfer is covered by federal law."). Here, all of the EFTs are governed by federal law (*i.e.*, OFAC's sanctions programs) and, therefore, UCC Article 4A cannot apply. The District Court's analysis ignores the inherent conflict between OFAC's sanctions and Article 4A.

Congress provided clear definitions of "property" by incorporating IEEPA and TWEA and thus, OFAC's regulations into TRIA. OFAC's property definitions mandate that a terrorist party must have an interest in the blocked asset, otherwise the EFTs would not have been blocked. This distinguishes executions under TRIA from the attachment statutes in *Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte, Ltd.*, 585 F.3d 58 (2d Cir. 2009) and *Export-Import Bank of the United States v. Asia Pulp & Paper Co., Ltd.*, 609 F.3d 111 (2d Cir. 2010), where no federal law established any property interest in the EFTs at issue.

8

### III.  IN THE EVENT THIS COURT CHOOSES TO ADDRESS IT, THE DISTRICT COURT'S INTERPRETATION OF TRIA IN DICTA SHOULD BE REVERSED

TRIA and the majority of cases interpreting that statute establish that once assets are blocked because a terrorist party holds a sufficient interest in them to justify blocking, those assets are subject to execution by victims of that terrorist party. *See Hausler I,* 740 F. Supp. 2d at 533-34 (". . . TRIA § 201(d)(2) defines 'blocked assets' to include all assets blocked under [OFAC's regulations regarding sanctions against Cuba], and . . . the Court is not persuaded that the word 'of' equates to actual ownership or title . . . ."); *Levin*, 2011 WL 812032, at *17 ("This definition of what constitutes a 'property interest' is substantially broader than that found under New York law, and evinces a congressional intent to block even property in which a terrorist entity has only a limited interest.").

The District Court's statement that assets must be owned by North Korea or one of its agencies or instrumentalities in order to be attachable simply misapplies the Supreme Court's decision in *Bd. of Trs. of the Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 131 S. Ct. 2188 (2011), by ignoring that the Court's decision was based on various factors unique to the legal regime at issue in that case.  In *Stanford*, the Court was confronted with interpreting the University and Small Business Patent Procedures Act of 1980, 35 U.S.C. § 200, *et seq*. (the "Bayh-Dole Act"), which allocates ownership rights in federally funded inventions

9

between the Federal Government and federal contractors.  While the Court noted that the word "of" denotes "ownership," its interpretation of the statute relied upon a number of other factors, including (1) the distinct nature of patent law, (2) the lack of interpretative guidance from Congress or the Executive Branch, and (3) the purpose of the Bayh-Dole Act.  35 U.S.C. § 201(e).  131 S. Ct. at 2196.  The Court expressly recognized that, although a separate interpretation of the phrase "of the contract" was plausible in other contexts, "patent law has always been different . . . ."  *Id*.[5]

The District Court further misinterpreted the phrase "blocked assets of that terrorist party" by assigning dispositive significance to the word "of" instead of interpreting TRIA § 201(a)'s meaning as a whole.  *Hausler II*, 2012 WL 601034, at *8-9; *see also Roberts v. Sea-Land Services, Inc.*, 132 S.Ct. 1350, 1357 (2012) ("'It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'") (quoting *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989)).  As *Hausler II* points out, the District Court in this case "overlooks a very basic aspect of the TRIA" – its applicability to the assets of multiple nations.  *Id.*

---

[5] In dissent, Justice Breyer, joined by Justice Ginsburg, disagreed with the interpretation the majority placed on "invention of the contractor."  *Id*. at 2202 (Breyer, J., dissenting) ("Moreover, I do not agree that the language to which the majority points—the words 'invention of the contractor' and 'retain'—requires its result.").

at *9.  OFAC's sanctions programs involve the blocking of the property of several countries (and terrorist organizations).  *See*, *e.g.*, 31 C.F.R. part 544 (NPWMD); 31 C.F.R. part 595 (SDGT); North Korea Sanctions Regulations, 31 C.F.R. part 510[6]; CACRs 31 C.F.R. part 515 (Cuba); Sudanese Sanctions Regulations, 31 C.F.R. part 538.  The most logical reading of Congress' intention with the phrase "of that terrorist party" is that only the victims of the *particular terrorist state* whose assets have been blocked may collect against *those particular assets*.  *Hausler II*, 2012 WL 601034 at *9.  In other words, the phrase "of that terrorist party" dictates that victims of *Syrian* terrorism cannot use TRIA to execute against assets blocked because *Iran* holds an interest in those assets.  Amici support the Appellant's interpretation of the word "of" in the context of TRIA as meaning "derivation," "origin," or "association," which is in line with *Hausler II*.  *See* Appellant's Br. at 43-48.

Indeed, OFAC itself broadly classified the "assets of" terrorist parties to include assets in which the property interest fell short of title to the property.  In its 2001 "Terrorism Asset Report" ("2001 TAR"), which reported to Congress "the nature and extent of assets held in the United States by terrorist countries and any organization engaged in international terrorism" and was delivered to Congress

---

[6] However, as discussed above, North Korea is no longer designated a state sponsor of terrorism.  *See* Notice, Rescission of Determination Regarding North Korea, 73 Fed. Reg. 63540-01 (Oct. 24, 2008).

one month before the enactment of TRIA in November 2002, OFAC stated that "[m]ore than $4 billion in *assets of* the seven designated state sponsors of terrorism are located within U.S. jurisdictions," and that "[a]pproximately ninety-one percent of the identified US-based *assets of* state sponsors of terrorism…are under OFAC sanctions controls." 2001 TAR at 1-2 (emphasis added). OFAC characterized these amounts as "assets of" terrorist parties despite also explaining that they represent amounts blocked under sanctions programs and that, "[i]n many instances, the interest may be partial, or may fall short of title to the property." 2001 TAR at 3. Accordingly, the term "blocked assets of that terrorist party" and "property of a foreign state" as used in TRIA must be interpreted as encompassing the broader concepts of property and interests in property utilized by OFAC and not merely titled ownership of property.[7]

As recognized by the *Hausler I*, *Levin*, and *Hausler II* courts, TRIA is a remedial statute that demonstrates a clear congressional intent to subject terrorist parties' interests in blocked assets to execution. *See*, *e.g.*, *Hausler I*, 740 F. Supp. 2d at 536 ("TRIA's remedial purpose is plain from the face of the statute and is further supported by its legislative history."); *Weininger v. Castro*, 462 F. Supp. 2d

---

[7] The same interpretation applies to 28 U.S.C. § 1610(g) which uses the phrase "property of a foreign state".

12

457, 483 (S.D.N.Y. 2006) (discussing remedial nature of TRIA).[8]  Under generally

applicable principles of statutory interpretation, courts are directed to construe

remedial statutes liberally to achieve their purposes.  *Atchison, Topeka & Santa Fe*

*Ry. Co. v. Buell*, 480 U.S. 557, 561-62 (1987).

The legislative history of TRIA also evinces a broader Congressional

purpose to "deal comprehensively with the problem of enforcement of judgments

rendered on behalf of victims of terrorism in any court of competent jurisdiction,"

and "'establishes once and for all, that such judgments are to be enforced against

any assets available in the U.S.'"  *Weinstein*, 609 F.3d at 50 (quoting 148 Cong.

Rec. S11524, at S11528 (Nov. 19, 2002) (statement of Sen. Harkin)).   The

Conference Report makes the identical point by stating that "all such judgments

are enforceable against any assets or property under any authorities referenced in

Section 1610(f)(1)."  H.R. Rep. No. 107-779, at 22, 2002 U.S.C.C.A.N. at 1434.[9]

Congress did not restrict TRIA to require "ownership" by the terrorist state.  *See*

*Hausler I*, 740 F. Supp. 2d at 537 ("[W]here Congress wished to except property

from execution under TRIA, it did so."); *Heiser*, 807 F. Supp. 2d at 26 ("Congress

---

[8] 28 U.S.C. § 1610(g) is also a remedial statute.  *Heiser*, 807 F. Supp. 2d at 23 (discussing the "broad remedial language" of section 1610(g)).

[9] This is a reference to 28 U.S.C. § 1610(f)(1), which provides that judgments against terrorist states are to be enforceable against "any property with respect to which financial transactions are prohibited or regulated pursuant to [TWEA or the IEEPA] … or any other proclamation, order, regulation, or license issued pursuant thereto …"  28 U.S.C. § 1610(f)(1)(A).

13

has demonstrated its ability to exempt particular property from execution by—for example—explicitly exempting diplomatic property from the reach of the TRIA.").

Furthermore, the District Court's interpretation of the word "of" reads into the statute a requirement that Congress did not impose. *See Jama v. Immigration and Customs Enforcement*, 543 U.S. 335, 341 (2005) ("We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest."). In the FSIA, Congress distinguished between "interests in property" and "ownership" or "title". For example, in 28 U.S.C. § 1605A(g)(1), Congress demonstrated a clear ability to differentiate between traditional notions of "title" ownership and mere interests in property. Specifically, section 1605(A)(g)(1) provides for prejudgment liens of lis pendens and requires that the property in which a judgment creditor seeks to establish a lien must be "*titled* in the name of any defendant, or *titled* in the name of any entity controlled by any defendant if such notice [of lis pendens] contains a statement listing such controlled entity." 28 U.S.C. § 1605(A)(g)(1) (emphasis added). However, in TRIA, Congress excluded any requirement that the assets subject to execution be "titled" in the name of the foreign state or agency or instrumentality. *See also* 28 U.S.C. § 1603(b)(2) (defining an agency or instrumentality as "an organ of a foreign state or political

14

subdivision thereof, or a majority of whose shares *or other ownership interest is owned by* a foreign state or political subdivision thereof" (emphasis added)).

More fundamentally, a broad holding that only assets wholly and demonstrably owned by the terrorist party are subject to execution would lead to the absurd and inequitable result of blocking assets due to a terrorist party's ownership interest, but, in contravention of Congress' stated intent in TRIA, making those assets unavailable to compensate victims of terrorism, such as Amici. Furthermore, such a broad holding would enable terrorist parties to engage in the fraudulent masking of their assets in order to escape attachment pursuant to FSIA and TRIA. Therefore, TRIA should be applied as Congress intended to subject *any* blocked asset in which the terrorist party has *any* interest to execution.

Respectfully submitted,

Dated: New York, New York
June 8, 2012

_____/s/ Liviu Vogel_____
Liviu Vogel
Salon Marrow Dyckman Newman & Broudy LLP
292 Madison Avenue
New York, NY 10017
(212) 661-7100
lvogel@salonmarrow.com

-and –

James P. Bonner
Patrick L. Rocco
Stone Bonner & Rocco LLP
260 Madison Avenue, 17th Floor

15

New York, NY 10016
(212) 239-4340
jbonner@lawssb.com
procco@lawssb.com

*Attorneys for the Peterson Amici Parties*

Neal Sher
Law Offices of Neal M. Sher
132 East 43rd Street, Suite 304
New York, New York  10017
(917) 409-0100
nealsher@gmail.com

*Attorneys for the Heiser Amici Parties*

Suzelle M. Smith
Don Howarth
523 West Sixth Street, Suite 728
Los Angeles, California  90014
(213) 955-9400
ssmith@howarth-smith.com
dhowarth@howarth-smith.com

*Attorneys for Amici Jeremy Levin and Dr.
Lucille Levin*

Steven K Barentzen
The Law Office of Steven Barentzen
1575 Eye Street, NW, Suite 300
Washington, DC 20005
(202) 289-4333
Steven@Barentzenlaw.com

*Attorneys for the Murphy Amici Parties*

16

Keith M. Fleischman
June H. Park
Fleischman Law Firm
565 Fifth Avenue, Seventh Floor
New York, New York 10017
(212) 880-9569
keith@fleischmanlawfirm.com
jpark@fleischmanlawfirm.com

*Attorneys for the Valore Amici Parties*

Moshe Sasson, Esq.
Sasson Law PLLC
1350 Broadway, Suite 212
New York, New York 10018
(212) 949-7501
msasson@sassonlawpllc.com

*Attorneys for the Greenbaum and Acosta
Amici Parties*

17

## Certificate of Compliance With Rule 32(a)

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    this brief contains 3,695 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    this brief has been prepared in a proportionally spaced typeface using Microsoft Word 97 in 14 pt Times New Roman font.

(s):          s/_____Liviu Vogel_____
Attorney for:      The Amici
Dated:         June 8, 2012

18